UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

IMAGINE MEDISPA, LLC,
f/k/a MEDICAL WEIGHT LOSS CLINIC
OF CHARLESTON, LLC,
and DAVID A. RUBIO,

       Plaintiffs,

v.                           Civil Action No. 2:13-26923

TRANSFORMATIONS, INC.
a West Virginia Corporation,
formerly doing business as
Transformations Weight Loss &
Skin Clinic, Inc., formerly doing
Business as Bariatric Medicine
of Huntington, Inc.,
and LIZA ANTOINETTE FREDERICK, M.D.
a/k/a TONI GALBRAITH, M.D.,
and JOSHUA P. GALBRAITH,

       Defendants.

MEMORANDUM OPINION & ORDER

       Pending is the plaintiffs' motion for a preliminary injunction, filed January 8, 2014.  The court conducted a hearing on the motion on February 6, 2014, at which there appeared Scott H. Kaminski for the plaintiffs and Karen Tracy McElhinny for the defendants.

I. Factual and Procedural Background


A. The Complaint and Motion to Dismiss


This case arises out of a dispute between two competitors in the medical weight-loss and skin care industry, each of which provides "highly similar goods and services in overlapping geographic areas." See Compl. ¶¶ 13-14.  Plaintiff Imagine Medispa, LLC ("Imagine"), a West Virginia corporation with its principal place of business in Charleston, West Virginia, provides "medical weight loss and skin care services . . . . through the provision of diet drug therapies[,] exercise[,] and through nutritional counseling." Id. ¶¶ 1, 9, 10.  Plaintiff David Rubio is a West Virginia resident and the owner of Imagine.  Id. ¶ 2.  Transformations, Inc. ("Transformations") is a West Virginia corporation with its principal place of business in South Charleston, West Virginia. Id. ¶ 3.  Like Imagine, Transformations also provides "medical weight loss and skin care services . . . . through the provision of diet drug therapies[,] exercise[,] and through nutritional counseling."  Id. ¶¶ 11, 12.  Defendant Joshua Galbraith is a West Virginia resident and "an incorporator and officer of Transformations."  Id. ¶ 5.  Defendant Liza Antoinette Frederick, M.D., is also a West Virginia resident, and was "an

2

incorporator" of Bariatric Medicine of Huntington, Inc., Transformations' predecessor-in-interest.  Id. ¶ 4.  She is now alleged to be involved in the operation of Transformations.  Id. Both Imagine and Transformations operate in southern West Virginia.  Id. ¶¶ 9, 11.

In their complaint, the plaintiffs contend that the defendants have engaged in a variety of unfair business practices over the course of several years.

First, the plaintiffs allege that the defendants knowingly published false advertisements touting Transformations' competitive prices for certain services in 2010 and 2011.  Specifically, they claim that, beginning in November of 2010 and continuing throughout 2011, the defendants distributed promotional materials and advertisements through Valpak[1] claiming that Transformations was "West Virginia's Lowest Price Weight Loss & Skin Care Clinic."  Id. ¶¶ 15-16.  In April of 2011, the defendants distributed a coupon through Kroger which similarly claimed that Transformations had the "Lowest Prices in WV!".  Id. ¶¶ 17-18.  Both advertisements were distributed in interstate commerce and received by "thousands of

---

[1] Valpak is a "direct marketing" company that mails coupons to households throughout the United States.  See About Valpak, http://www.coxtarget.com/corp/about.html.

persons." Id. ¶¶ 19-21. The plaintiffs contend, however, that each quoted statement was "literally false," id. ¶¶ 31-32; that Transformations' prices are, in fact, "not the lowest in West Virginia," id. ¶ 29; and that "Imagine's prices for substantially identical products and services are lower than the prices offered by" Transformations, id. ¶ 30. In addition to these specific advertisements, the plaintiffs also allege that the defendants have "produced and caused to be aired false and misleading television and radio advertisements concerning their services," id. ¶ 22; and that the defendants "falsely advertised that they offered three weight loss drugs for $65.00 when in fact two of the so-called drugs offered were merely an over-the-counter nutritional supplement and a diuretic," id. ¶ 26. The complaint does not disclose when these advertisements were made, or how the advertisement for the weight loss drugs was distributed.

Second, the plaintiffs claim that the defendants engaged in fraudulent or misleading use of online social media websites such as Facebook and Craigslist. See generally id. ¶¶ 23-24. According to the complaint, the defendants created a fictitious or misleading Facebook Profile using Rubio's name. Id. ¶ 23. The Profile falsely stated that Rubio was a former employee of Imagine, and indicated that Rubio "liked"

Transformations.[2]  Id.  The plaintiffs assert that the defendants also created a fictitious advertisement for a 2010 Chevrolet Camaro that was posted on the online marketplace Craigslist. The listing named Rubio as the seller and included Rubio's office telephone number, resulting in Rubio receiving "scores of calls from individuals inquiring about [a] Camaro that [wa]s not owned or for sale by" Rubio.[3]  Id. ¶ 24.

Finally, the plaintiffs allege that the defendants "contacted Imagine employees in an effort to learn trade secrets or other confidential information and/or to lure some of those employees away," id. ¶ 25, and also "falsely told Imagine's clients and potential clients that Imagine used unlicensed doctors and had to change its name due to issues with the authorities," id. ¶ 27.[4]

---

[2] The complaint does not explain when the fictitious profile was created.

[3] Later in the complaint, the plaintiffs allege that the advertisement caused "unknown, unsolicited individuals to call [Rubio's] personal home number (which is publicly listed) at all hours of the day and night inquiring about [the] Camaro[.]" Compl. ¶ 59.  It is unclear whether the advertisement listed Rubio's home or office telephone number.

[4] In Paragraph 28 of the complaint, the plaintiffs claim that "[b]y the business arrangements herein, defendant Frederick is[,] and continues to be[,] in violation of an Amended Consent Order entered on June 7, 2013 by the West Virginia Board of Medicine."  The referenced consent order was not attached to the complaint, and the complaint provided no additional context for this assertion.

Plaintiffs assert that the false advertisements and fictitious Facebook Profile have directed clients and potential customers away from Imagine and towards Transformations, and "lessen[ed] . . . the good will associated with Imagine's goods and services." Id. ¶¶ 23, 34. They similarly contend that the Craigslist advertisement was "clearly and intentionally designed to "be harassing to [Rubio] and disruptive to his personal life and professional business as owner of [Imagine]. Id. ¶ 24. On October 26, 2013, they commenced this suit, charging the defendants with false advertising and unfair practices in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), tortious interference with contract or business relationship (Count II), defamation (Count III), and invasion of privacy (Count IV).

The defendants moved to dismiss on December 20, 2013, arguing that the well-pleaded facts in the complaint failed to state any claim upon which relief could be granted; alternatively, they argued that the plaintiffs' claims were time-barred by the applicable statutes of limitation.

In response to the motion to dismiss, the plaintiffs introduced a number of new factual allegations and exhibits that were not included in the complaint. They clarified, for

example, that Rubio first discovered the fictitious Facebook Profile in his name sometime after June 12, 2013, and that he first began receiving telephone calls regarding the 2010 Camaro in October of 2013.  Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n") at 2.

The plaintiffs also alleged, for the first time, that the defendants created a second fictitious Facebook Page under the name "Imagine Medispa."  See id. at 3-4.  They claim that the fictitious Page improperly used Imagine's trademark, and that the defendants used the Page to fraudulently induce Facebook members, including an Imagine employee named Amy Lively, as well as Imagine patients, to "Like" Transformations' Facebook Page.  Specifically, the plaintiffs assert that the defendants used the fictitious Page to send "friend requests," to Facebook members that, once accepted, added the recipients to the list of "friends" affiliated with Transformations' Facebook Page.  Id.

Although the fictitious Imagine Medispa Facebook Page apparently became inactive sometime on or after November 5, 2013, id., the plaintiffs claim that Rubio undertook to place a disclaimer on Imagine's "true" Facebook Page in order to resolve any lingering confusion and to clarify that Imagine was a distinct entity from Transformations.

The plaintiffs did not amend their complaint to include these new allegations.

B. The Motion for Injunctive Relief

On January 8, 2014, the plaintiffs moved for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.  They request an order "enjoining [d]efendants from use of any [I]nternet based advertising or communications related in any way to their business or [p]laintiffs' business or Rubio personally[.]"[5]  The motion incorporates all of the allegations discussed above, but, like the plaintiffs' response to the motion to dismiss, contains new factual pleadings, and also appears to assert two new causes of action that were not pled in the complaint.  For example, the motion states that the defendants' actions "are a blatant attempt to circumvent the Settlement Agreement entered between" the parties on June 12, 2013, "which agreement envisioned the parties ceasing activities

---

[5] Despite the apparent breadth of this language, the plaintiffs later clarified that they were not seeking to "enjoin [d]efendants from all [I]nternet advertising," but, rather, "only seek to enjoin [d]efendants from engaging in . . . advertising and solicitation that . . . misinforms the public and intentionally misdirects the public to [d]efendants' website by falsely posing as [p]laintiff."  Plaintiffs' Memorandum of Law in Reply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Injunction ("Pls.' Reply") at 2.

designed to impede the other's ability to legally operate[.]"[6] Plaintiffs' Motion for Injunction ("Pls.' Mot.") ¶ 11.

The plaintiffs also claim that the defendants' alleged conduct may have violated West Virginia Code § 61-3C-14a, which makes it unlawful to use computers, cell phones, and electronic communication devices to harass or abuse another person, and may be contrary to West Virginia Code § 30-3-14(c), which permits the West Virginia Board of Medicine to deny a medical license to anyone who solicits patients through the use of fraud.  Id. ¶¶ 14-15.

The court will not consider the plaintiffs' belated allegations that the defendants violated West Virginia Code §§ 61-3C-14a and 30-3-14I.  "The purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed through the illegality alleged in the complaint."  Omega World Travel, Inc.

---

[6] Under the settlement agreement, which was attached as an exhibit to the plaintiffs' motion, Transformations and Imagine each agreed to withdraw all "requests for affected party status and requests for administrative hearing before the [West Virginia Health Care] Authority relating to certificate of need applications and letters of intent" that were then-pending.  The parties also agreed not to revive their requests after the settlement agreement was executed.  As Transformations has noted, both parties promised to keep the settlement agreement confidential when it was executed.

v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997).  As a
result, new claims unrelated to the allegations contained in the
complaint cannot serve as the basis for a preliminary
injunction.  See, e.g., Devose v. Herrington, 42 F.3d 470, 471
(8th Cir. 1994) (per curiam) ("Although these new assertions
might support additional claims against the same [defendants],
they cannot provide the basis for a preliminary injunction[.]");
Faust v. Cabral, No. 12-11020, 2013 WL 3933021, at *10 (D. Mass.
July 30, 2013); Pourkay v. City of Phila., No. 06-5539, 2009 WL
1795814, at *11 n.1 (E.D. Pa. June 23, 2009).  Section 61-3C-14a
is a criminal statute.  Section 30-3-14I authorizes the Board of
Medicine to withhold licenses from healthcare providers who
solicit patients through fraud.  Neither statute is a tool
designed to permit businesses and their owners to pursue civil
claims for unfair or deceptive advertising and business
practices, defamation, or invasion of privacy.  Accordingly,
because these new claims do not relate to the "illegality
alleged in the complaint," they cannot form the basis for a
preliminary injunction.  Cf. Omega World Travel, 111 F.3d at 16.

10

## II. Standard of Review

"A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants[,] . . . . on a temporary basis, the relief that can be granted permanently after trial[.]"  The Real Truth About Obama, Inc. v. FEC ("Real Truth I"), 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds, Citizens United v. FEC, 558 U.S. 310 (2010), and reissued as to Parts I & II, The Real Truth About Obama, Inc. v. FEC, 607 F.3d 355 (4th Cir. 2010) (per curiam).  The party seeking the preliminary injunction must demonstrate:

> "[1] [T]hat he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

Id. at 346 (quoting and citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  All four elements must be established by "a clear showing" before the injunction will issue.  Id.; see also Winter, 555 U.S. at 23 (stating that a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

11

### III. Discussion

According to the plaintiffs, they are entitled to injunctive relief because: the evidence establishes that the defendants created the Craigslist advertisement and Facebook pages in question; those advertisements were false and misleading; the fictitious Facebook pages are directing the public to Transformations' services, causing irreparable harm to Imagine; nothing "could possibly be more inequitable than targeting a competitor's clients and employees with false information"; and the injunction is necessary to protect the public from the false information being disseminated through Facebook by the defendants.  See Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Injunction ("Pls.' Reply") at 2-3.

The defendants, for their part, insist that they are not responsible for any of the disputed Craigslist or Facebook activities, and maintain that the plaintiffs have failed to establish any of the four elements required under Winter and Real Truth I.

A. Evidence Considered; Finding of Facts

Before issuing a decision, the court must state the
factual findings or conclusions that support granting or denying
the requested injunctive relief.  Fed. R. Civ. P. 52(a); see
also Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550
F.2d 189, 192 n.1 (4th Cir. 1977) ("We observe sympathetically
that Rules 52(a) and 65(d) require findings of fact, albeit
tentative.").  The party seeking the injunction bears the burden
of providing a sufficient factual basis by offering some proof
beyond the unverified allegations in the pleadings.  See 11A
Charles Alan Wright et al., Federal Practice & Procedure § 2949
(2d ed. 1995) ("Evidence that goes beyond the unverified
allegations of the pleadings and motion papers must be presented
to support or oppose a motion for a preliminary injunction.");
Palmer v. Braun, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001)
(same).

The Supreme Court has explained that a preliminary
injunction, if granted, is customarily issued "on the basis of
procedures that are less formal and evidence that is less
complete than in a trial on the merits."  Univ. of Tex. v.
Camenisch, 451 U.S. 390, 395 (1981).  As a result, the movant
may satisfy its burden by submitting affidavits and other

evidence that might otherwise be inadmissible under the Federal Rules of Evidence.  See, e.g., Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 718-19 (3d Cir. 2004); Heiderman v. South Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings."); Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction . . . .").

Statements contained in an uncontroverted affidavit may be accepted as true, Elrod v. Burns, 427 U.S. 347, 350 n.1 (1976) ("For purposes of our review . . . uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true."), "but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required," Cobell v. Norton, 391 F.3d 251, 261 (D.C. Cir. 2004); Blackwelder Furniture Co., 550 F.2d at 192 n.1 (noting that if "everything turns on what happened and that is in sharp dispute," the court should ordinarily hold an evidentiary hearing and require live testimony, rather than rely on the parties' submissions (quoting Semmes Motors, Inc. v. Ford Motor

14

Co., 429 F.2d 1197, 1204 (2d Cir. 1970))). Moreover, the weight
to be accorded affidavit testimony is within the discretion of
the court, and statements based on belief rather than personal
knowledge may be discounted. Federal Practice & Procedure
§ 2949 (collecting authority).

The plaintiffs' motion is supported by several
exhibits. Briefly summarized, those exhibits include: (1) the
Affidavit of David A. Rubio ("Rubio Aff."), describing the
allegedly improper use of Facebook and Craigslist; (2) a screen-
shot of the advertisement for the 2010 Camaro posted to
Craigslist on October 17, 2013 ("Craigslist Ad"), listing David
Rubio as the seller; (3) an undated image, presumably captured
from Facebook, apparently indicating that Rubio "LOve[s]"
Transformations ("Exhibit 4"); (4) the Affidavit of Michael S.
Haid ("Haid Aff."), stating that Haid received a friend request
from the fictitious Imagine Medispa Facebook Page that, once
accepted, caused Haid to become a friend of Transformations'
Facebook Page; (5) a screen-shot of the friend request allegedly
sent to Haid; (6) the affidavit of Melissa Bailey ("Bailey
Aff."), stating that Bailey received friend requests from the
fictitious Rubio Profile and fictitious Imagine Medispa Page;
(7) the affidavit of Amy Lively ("Lively Aff."), stating that
Lively received friend requests from the fictitious Imagine

15

Medispa Facebook Page; (8) a screen-shot depicting a Facebook friend request from the allegedly fictitious Imagine Medispa Page, and displaying Rubio and Transformations as "friends" (the "Friend Request"); and (9) a collection of Facebook comments and messages from unidentified individuals stating that they had received friend requests from the fictitious Imagine Medispa Page that caused them to be added as friends of Transformations (the "Facebook Responses").

The defendants have submitted two affidavits of their own.  In the first, defendant Galbraith swears that neither he, nor any employee or agent acting on behalf of Transformations, created the fictitious Facebook pages or the Craigslist advertisement.  Affidavit of Joshua P. Galbraith ("Galbraith Aff.") at 2-3.  In the second, defendant Frederick swears that she has had no affiliation with Transformations since 2010 and that she is not involved in any way with Transformations' advertising or marketing activities, or Transformations' use of social media.  Affidavit of Liza Antoinette Arceo ("Arceo Aff.") at 2.

Neither party offered any additional evidence at the February 6, 2014 hearing.

Based on the uncontroverted portions of the affidavits and other exhibits submitted in support of the plaintiffs' motion, the court finds as follows:

1. Sometime between June 12, 2013 and October 26, 2013, a Facebook Profile under the name David Rubio was created by someone other than Rubio. Rubio Aff. ¶ 5.  The fictitious profile stated that Rubio was a former Imagine employee, and indicated that Rubio "liked" Transformations' Facebook Page.  Id.

2. An advertisement for a 2010 Chevrolet Camaro was posted to Craigslist on or around October 17, 2013.  Id. ¶ 6; see also Craigslist Ad.  The advertisement listed Rubio as the seller and included Rubio's telephone number. Rubio Aff. ¶ 6.  Rubio received numerous telephone inquiries about the Camaro, and those calls disrupted his personal and professional life.  Id.

3. Sometime in October 2013, a "false" Facebook Page under the name Imagine Medispa was created and began sending "friend requests" to Imagine employees and patients. See Rubio Aff. ¶ 8; Haid Aff. ¶ 4; Lively Aff. ¶¶ 2-4. The fictitious Imagine Medispa Page listed Transformations' Facebook Page and the fictitious Rubio Profile as "friends."  Lively Aff. ¶¶ 3-4.  When the contacted individuals accepted the "friend requests" from the fictitious Imagine Medispa Page, they were instead added as "friends" of the Transformations Page. Haid Aff. ¶¶ 4-5.  Several individuals believed that Transformations was responsible for the fictitious Imagine Medispa Page.  See Haid Aff. ¶ 8; see also Rubio Aff. ¶ 11 ("I am not aware of any other person or business entity other than Transformations . . . that have . . . reason to create the . . . false and misleading Facebook pages[.]").

None of the affiants testify to having personal knowledge that the defendants created the misleading Facebook pages or the Craigslist advertisement, and, as noted, the defendants strenuously deny any responsibility.  See Galbraith

Aff. at 2-3; Arceo Aff. at 2; Defendants' Opposition to Plaintiffs' Motion for Injunction ("Defs.' Opp'n") at 3 ("Plaintiffs' assertions concerning Facebook and Craigslist postings are blatantly false."); id. ("Defendants never sent Facebook friend requests under the guise of another business or person. Defendants are unable to cease conduct that they are not engaging in."); id. at 12 ("Plaintiffs summarily claim that the alleged Craigslist advertisement was placed by Defendants, but they offer no factual support that would enable this [c]ourt or a finder of fact to determine that claim's veracity. In fact, Defendants did not create a false Craigslist advertisement."). As a result, and in light of the fact that the parties have not submitted any additional evidence or testimony, the court cannot find at this time that the defendants created the fictitious Facebook pages or the Craigslist advertisement. Cf. Cobell, 391 F.3d at 261 ("[W]hen a court must make credibility determinations to resolve key factual disputes in favor of the nonmoving party, it is an abuse of discretion for the court to settle the question on the basis of documents alone, without an evidentiary hearing.").

Moreover, although the plaintiffs allege in their complaint that the defendants' conduct has directed clients and potential customers away from Imagine and towards

Transformations, and "lessen[ed] . . . the good will associated
with Imagine's goods and services," Compl. ¶¶ 23, 34, they have
not offered any evidence to suggest that Imagine has suffered a
loss of clients or revenue as a result of the defendants'
conduct.

B. Analysis

        Based on the foregoing finding of facts, the
plaintiffs are not entitled to injunctive relief because they
cannot clearly establish that they are likely to succeed on the
merits of their claim, and cannot establish that they are likely
to suffer irreparable harm in the absence of preliminary relief.

                    1. Likelihood of Success

        In a separate memorandum opinion and order issued this
day, the court granted in-part and denied in-part the
defendants' motion to dismiss.  Specifically, the court ruled
that the plaintiffs could not state a false advertising claim
under the Lanham Act, but had sufficiently alleged a false
endorsement Lanham Act claim.  The court also concluded that
aspects of the plaintiffs' tortious interference and defamation
claims survived the motion to dismiss, and that some variants of

                              19

the plaintiffs' invasion of privacy claim were also sufficient
to state a claim.

Factual allegations that are sufficient to survive a
motion to dismiss do not, however, necessarily entitle a party
to injunctive relief.  Rather, to obtain a preliminary
injunction, the plaintiffs must first "make a clear showing that
[they] will likely succeed on the merits at trial."  Real Truth
I, 575 F.2d at 346-47.  Merely showing that "grave or serious
questions are presented for litigation" will not suffice.  Id.

In this case, the evidence submitted by the parties
reveals a key factual dispute concerning the identity of the
party responsible for the creation of the fictitious Facebook
Pages and Craigslist advertisement.  As noted, some of the
circumstantial evidence presented by the plaintiffs led several
individuals, largely associated with the plaintiffs, to believe
that the defendants were responsible for the fictitious Facebook
pages, but none of the plaintiffs' affiants testify to having
any direct knowledge that the defendants are responsible, and
the defendants themselves strenuously deny any involvement.  At
best, the evidence adduced thus far shows only that "grave or
serious questions" regarding liability "are presented for
litigation."  As a result, the plaintiffs have not clearly
established that they are likely to succeed on the merits of

20

their claims.  Cf. Marshall Durbin Farms, Inc. v. Nat'l Farmers
Org., Inc., 446 F.2d 353, 357 (5th Cir. 1971) (stating that
district courts show an "appropriate reluctance" to issue
preliminary injunctions when "the moving party substantiates his
side of the factual dispute on information and belief."); 
Cobell, 391 F.3d at 261 (noting that affidavit evidence may be
insufficient to support a preliminary injunction when key
factual determinations turn on the credibility of the parties).

### 2. Irreparable Harm

In light of the plaintiffs' failure to meet their
burden of demonstrating likelihood of success on the merits, the
court need not resolve "the parties' arguments concerning the
remaining three [Real Truth I] factors." Dewhurst v. Century
Aluminum Co., 731 F. Supp. 2d 506, 521 n.23 (S.D. W. Va. 2010),
aff'd, 649 F.3d 287 (4th Cir. 2011).  Nevertheless, the
plaintiffs' failure to show a likelihood of irreparable harm
further undermines their request for preliminary relief.

As a general matter, temporary, episodic injuries that
can be compensated by the award of money damages are not
considered irreparable harms.  A Helping Hand, LLC v. Baltimore
Cnty., 355 F. App'x 773, 776 (4th Cir. 2009) (holding that cost

21

of relocation "does not constitute irreparable (rather than temporary) injury," because "money damages could compensate any cost" of relocation (citing <u>Taylor v. Resolution Trust Corp.</u>, 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("[I]n the absence of special circumstances, . . . recoverable economic losses are not considered irreparable."))); <u>Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.</u>, 17 F.3d 691, 694 (4th Cir. 1994) ("Monetary relief typically may be granted as easily at judgment as at a preliminary injunction hearing, and a party does not normally suffer irreparable harm simply because it has to win a final judgment on the merits to obtain monetary relief.").

In their motion for injunctive relief, the plaintiffs admit that the Imagine Medispa Facebook Page became inactive on or after November 5, 2013, Pls.' Mot. at 3, suggesting that the fictitious Imagine Medispa Facebook Page is no longer directing the public to Transformations' services. At the hearing, counsel for the plaintiffs clarified that the fictitious Rubio Facebook Profile has also been inactive since early November 2013. Moreover, the plaintiffs have not submitted any evidence indicating that Imagine has suffered a loss of clients or revenue at any point as a result of the fictitious Facebook Pages. In fact, at the hearing, plaintiffs' counsel admitted that, although some Imagine clients had "liked" the

Transformations Facebook Page, none of those clients had stopped using Imagine's services.  Alternatively, plaintiffs' counsel argued at the hearing that the inactive Facebook Pages may be causing ongoing confusion in the market about the relationship between Imagine and Transformations, but the plaintiffs have not submitted any evidence of ongoing confusion in support of their motion.  Rather, the evidence submitted thus far suggests that the Imagine clients who received friend requests from the fictitious Imagine Medispa Facebook Page recognized the deception and either informed Rubio, see Rubio Aff. ¶ 10 ("[S]everal patients . . . notified me that they had received "Friend" requests from the false Facebook page."), or blamed Transformations, see Facebook Responses ("I would like to know why there is a fake Imagine Medispa page ya made that adds us to your group? Kinda tacky if you ask me.").

        In sum, the fictitious Facebook Pages appear to have been inactive for several months, and the evidence adduced thus far does not indicate that the plaintiffs will continue to suffer from the loss of clients or from ongoing confusion in the marketplace in the absence of injunctive relief.

IV. Conclusion

Accordingly, because the plaintiffs have not shown a likelihood of success on the merits, and in addition, have not shown a likelihood of irreparable harm, the motion for preliminary injunctive relief must be, and is, denied.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

DATED: February 26, 2014

John T. Copenhaver, Jr.
United States District Judge